St. Paul & Northern Pacific Railway Company *vs.* George B. Bradbury and others.

December 24, 1889.

**Building Contract — Estimates Controlled by Plans and Specifications.**—Plaintiff's "notice to proposers" for the construction of certain buildings had annexed to it the plans and specifications of the buildings, and also estimates by plaintiff's engineers of the amount of material required to construct them; but also stated that the quantities and amounts given in these estimates must be verified by the proposer by the aid of the plans, as the plaintiff would not be responsible for any error resulting from their use. A proposer, without verifying these estimates, but supposing them to be correct, put in a bid and made a contract to furnish the material and erect the buildings, according to the plans, for a gross sum. *Held*, that the fact that it required more material to construct the buildings than the estimates annexed to the notice did not entitle him to an allowance beyond the contract price.

**Same—Provision for Umpire—His Decision Conclusive.**—The contract constituted the plaintiff's chief engineer sole umpire to decide the amount and quantity, character and kind, of work performed and materials furnished under the contract, and stipulated that his decision should be final and conclusive upon both parties. *Held*, that his decision, in the absence of fraud or such gross mistake as would imply bad faith or a failure to exercise an honest judgment, is conclusive.

**Findings on Issues not made by Pleadings — Presumption. —** It will be presumed, in the absence of anything to the contrary, that the parties voluntarily consented to try all issues covered by the findings of the court, although not within the pleadings.

Plaintiff brought this action in the district court for Hennepin county, as obligee in a bond conditioned that Roland E. Patterson (one of the obligors, the others being his sureties,) should well and faithfully perform a written contract he had made with plaintiff for the construction of its "Como shops." The complaint alleges that in and by the contract Patterson covenanted that the buildings to be constructed under it should be kept clear of liens for labor, workmanship, and material, and that no claim should exist at the completion

of the contract in respect to which such liens could attach.    The complaint further alleges that Patterson substantially constructed the buildings, and the final estimate made in accordance with the contract showed the amount due him, including all extra allowances under the contract, to be $151,258.11, of which he had been paid $146,768.89, leaving unpaid $4,489.22.    That defendant has failed to perform his covenant against liens, and that the buildings have become subject to liens for work, labor, and materials furnished and performed by his subcontractors, to an amount greater than such unpaid balance, which liens have been established by judgments in actions against Patterson and this plaintiff, the judgments being described in detail.

The sureties in the bond, in their answer, deny the making of any final estimate, and deny generally any breach of his contract by Patterson, and allege, as a counterclaim, (1) that before the contract was made the plaintiff furnished Patterson estimated quantities of all the material that would be required to complete the buildings as planned by plaintiff, and represented that the estimates had been carefully made and were correct; that in making the contract both plaintiff and Patterson relied on the correctness of the estimates, meaning to base the contract upon correct estimates; that such estimates were erroneous and understated the quantities required for the buildings as planned, by reason whereof Patterson was compelled to use labor and material to the amount of $20,000 more than if the estimates had been correct.  (2) That Patterson did work and furnished material, at plaintiff's request, other and different from what was contemplated and covered by the contract, to the amount of $13,000, which the plaintiff agreed to pay.    The relief asked is that the contract be reformed "so as to conform to the true quantities as may be shown to have been included therein," and that plaintiff be adjudged to be indebted to Patterson in the sum of $33,000, and that the sureties be discharged from liability on the bond.    The reply was a general denial.

At the trial, before *Lochren,* J., the plaintiff introduced in evidence the written contract with the specifications and the "Notice to Proposers" which formed part of it, the material parts of which are

quoted in the opinion. The defendants, in support of their counter-claim, offered to show that the estimates contained in the "Notice to Proposers" were erroneous and insufficient for the buildings called for by the plans and specifications; that in the construction of the buildings Patterson was compelled to and did use a much larger quantity than stated in the estimates; that the error in the estimates was caused by a mistake of plaintiff's engineer shared by Patterson, so that the contract was based on a mutual mistake. And they further offered to show the true quantities required to be used and in fact used in the construction of the buildings. This was objected to and excluded, on the ground that the quantities were to be verified by the contractor, and the plaintiff was not to be responsible for any mistake.

The defendants then offered to show, independent of the question of reforming the contract, that Patterson, with plaintiff's knowledge and consent, furnished additional material necessary for the construction of the buildings as made, which material was accepted by plaintiff, "it being stated in the contract that the quantities estimated are approximate merely, and are subject to change and alteration as therein provided; and that our claims were all put in and represented, but that there was a large portion of them disallowed." To this the plaintiff's counsel objected that it was incompetent, irrelevant, and immaterial under the pleadings and evidence; that the contract excludes any such evidence; and that "it already appeared by the evidence on the part of the plaintiff that Patterson had presented his claims for this extra material; that the same had been fully passed upon by the chief engineer of plaintiff, and each item either allowed and included in the final estimate, or disallowed by him." The objection was sustained, and to this as to the former ruling the defendants excepted.

The court found, among other facts, that, pursuant to the contract, Patterson, prior to the end of January, 1886, constructed the buildings therein mentioned, and did for plaintiff other and extra building not specifically mentioned in the contract, but similar in character and material; and that the final estimate by defendant's chief engineer after the completion of all plaintiff's work showed the whole

amount payable to Patterson under the contract, including such extra building and all extras, to be $151,258.11, of which plaintiff has paid $146,768.89, leaving a balance of $4,489.22 due to Patterson. The court also finds that Patterson did not perform his covenant in respect to liens, but suffered the buildings to become subject to liens in favor of Patterson's servants and subcontractors, for labor and material, which liens have been perfected by judgments to the amount of $15,632.70, all which the plaintiff has been compelled to satisfy and has satisfied, and none of which has been repaid to it. Judgment was ordered for plaintiff for $11,290.61.

Upon the filing of the decision, the defendants moved for leave to amend their answer by pleading a clause in the contract providing that plaintiff should retain 15 per cent. of all monthly estimates and all sums due Patterson on the contract until complete performance, and as additional security for such performance; that plaintiff did not retain such percentage, but, from October, 1885, to February, 1886, paid Patterson more than $16,000 out of the moneys so to be retained, while Patterson was still owing large sums for material furnished him by various persons for use in the buildings mentioned in the contract. And they also moved that the court amend its findings of fact by setting forth the clause in the contract as to retaining percentages, and by finding the fact in regard to plaintiff's failure to withhold them, as stated in the proposed amendment to the answer, and by finding that "it does not appear that the defendants' sureties on the bond herein mentioned or any of them were notified of or consented to such payments;" and they also moved the court to modify its conclusions of law to conform to the findings of fact as thus amended. The court refused to allow the amendment of the answer or to change its findings of fact. A subsequent motion for a new trial was denied, and the defendants appealed.

*Wilson & Lawrence* and *Byers & Augir,* for appellants.

*D. A. Secombe,* for respondent.

MITCHELL, J. 1. It seems to us, to use the language of the court below, that defendants' case "has nothing to rest on." The "notice to proposers" for the construction of plaintiff's shops contained plans and specifications of the buildings; also estimates by plaintiff's en-

gineers of the amount of material required to construct them according to the plans. But this notice (made a part of the contract) further states that "the quantities and amounts given in these forms of proposals must be verified by the proposer, as the company will not be responsible for any error resulting from their use. They can be verified by aid of the plans." Patterson, defendants' principal, without verifying these estimates for himself, put in his bid and made a contract to construct the buildings for a certain sum. The offer of defendants on the trial was, in substance, to show that Patterson supposed the estimates were correct, but that in fact they were too small, and that it required much more material to construct the buildings according to the plans. The relief asked is that the contract be reformed, and that Patterson be allowed, in addition to the contract price, the value of the material actually used in excess of the engineer's estimates. To reform the contract in this way would be, not merely to make a contract for the parties which they never agreed to, but to make one which defendant expressly declared it would not make. Patterson was expressly notified not to rely on the estimates, but to verify them for himself, which he had the means of doing; also that the company would not be responsible for any error resulting from their use. He not only put in his bid on this condition, but expressly assented to it in his contract. He took his chances, and must stand the consequences. The fact that it took more material to construct the buildings than estimated by the company's engineers does not entitle him to any allowance beyond the contract price. *Cannon* v. *Wildman,* 28 Conn. 472, 491.

2. Both parties have discussed the second assignment of error as if the offer referred to was of evidence that Patterson had furnished material for extra work not specified in the plans. We find nothing in the record to indicate that such was the offer, but we will treat it as the parties both seem to have understood it. The contract expressly gave the company the right to extend the contract so as to cover any additional work of the same nature that might be ordered by its chief engineer; also the right to make any such alterations or omissions of any of the work specified in the drawings as the chief engineer might consider desirable or necessary. It was solely with reference

to this right that it was elsewhere stated in the contract that the plans, maps, and profiles of the work prepared by the engineers, and the quantities estimated therefrom, were approximate merely, and were subject to change and alteration. It was further provided that, in case of any change in the present plans which necessitated alterations, additions, or omissions, the detailed proposals were to be used as a basis for a determination of the increase or decrease of the contract price of the work. All claims for extra work or material were to be presented to the chief engineer for allowance. It was also mutually covenanted and agreed by the parties that, to prevent disputes and misunderstandings between them in relation to any of the provisions of the contract, or of the true intent and meaning thereof, or the matter of performance thereof, and for a speedy settlement of such as might arise, the chief engineer of the plaintiff "shall be, and he is hereby made and constituted, the sole umpire to decide all such questions and matters. He shall also decide the amount and quantity, character and kind, of work and materials performed and furnished by the party of the first part under this contract, including all work and material; *and his decision shall be final, and shall be binding and conclusive, to all intents and purposes, and in all places, and on the said parties hereto.*" Provisions of this kind, especially in building and railroad-construction contracts, are very common, and the binding force of a stipulation leaving the estimate of the quantity and quality of the work absolutely to the determination of the architect or engineer or some other person, and making his decision final, is too well settled to admit of argument. In such a case his decision, in the absence of fraud or such gross mistake as would imply bad faith or a failure to exercise an honest judgment, is conclusive. *Kihlberg* v. *U. S.*, 97 U. S. 398; *Lauman* v. *Young*, 31 Pa. St. 306; *Lull* v. *Korf*, 84 Ill. 225; *Herrick* v. *Belknap*, 27 Vt. 673; *Hudson* v. *McCartney*, 33 Wis. 331; *Finegan* v. *L'Engle*, 8 Fla. 413, 422; *Kidwell* v. *Baltimore & Ohio R. Co.*, 11 Grat. 676, 690; *Whiteman* v. *Mayor, etc.*, 21 Hun, 117. The contract also provided that when the chief engineer was of opinion that Patterson had completed the work according to the contract, he should so certify in writing, with a final estimate of the work done, and a statement of the amount

due and unpaid thereon; and that, within 30 days after such final estimate, the company was to pay Patterson all moneys so found due him. In the absence of all the evidence in the case, we must assume that it was proved, as found by the court, and as stated by counsel on the trial as a ground for rejecting defendants' offer, that Patterson presented his claims for extra material; that the same were fully passed upon by the chief engineer, and each item either allowed and included in the final estimate or disallowed by him; and that this final estimate, so made and determined by the engineer, showed the amount and value of the work done by Patterson as stated in the complaint. Under this state of facts the defendant, without claiming or offering to prove any fraud or partiality on part of the engineer, or anything to indicate a failure on his part to exercise an honest judgment in the matter, proposed to go behind his estimate and decision, and show that he had not allowed Patterson enough. This could not be done. The decision of a court or jury cannot thus be substituted for that of the arbiter or umpire agreed on by the parties.

3. In the absence of all the evidence, we must assume that it fully justified the finding of the trial court that all the extra or additional work done by Patterson was similar to that specifically mentioned in the contract, and hence covered by it. The defendants, upon the authority of *Lautenschlager* v. *Hunter*, 22 Minn. 267, make the point that plaintiff could not avail itself of the provisions of the contract to exclude the evidence referred to in the first and second assignments of error, unless specially pleaded. No such point seems to have been made in the court below; but the court finds, as a fact, that after the work was completed the chief engineer made a final estimate showing the whole amount of compensation payable to the plaintiff under the contract, including all extras. The presumption is that this was justified by the evidence, and that such evidence was admitted without objection, and that the parties voluntarily consented to try all issues covered by the findings of the court, whether within the pleadings or not.

To the suggestion that the sureties were released by the failure of the plaintiff to withhold from Patterson 15 per cent. of the approx-

imate monthly estimates, it is enough to say that no such defence was pleaded, and there is nothing in the record to indicate that the parties consented to try any such issue. It was certainly no abuse of discretion to deny defendants' motion to be allowed to amend their answer so as to set up this defence, made nearly a year after the case was tried, and submitted on briefs.

Order affirmed.

NOTE. A motion for a reargument of this case was denied January 3, 1890.