VEGA STEAMSHIP COMPANY v. CONSOLIDATED ELEVATOR
COMPANY.

January 20, 1899.

Nos. 11,389—(222).

**Bill of Lading—Deficiency in Cargo of Wheat—Subrogation.**

The bill of lading for a cargo of wheat provided that any deficiency in
the amount of the cargo (delivered by third party from its elevator)
should be paid for by the carrier, and any excess in the amount should
be paid for by the shipper to the carrier. *Held*, when the carrier paid
the shipper for such a deficiency, the former was subrogated to any
rights which the latter had to recover for such deficiency from the
keeper of the elevator.

**Weighing Grain—Certificate of Weight under G. S. 1894, § 7675.**

*Held*, the legislature, by G. S. 1894, § 7675, intended to make con-
clusive the action of the state weighmaster in weighing wheat at terminal
elevators in certain cities, notwithstanding the provisions of section
7706.

**Same—Weights not Conclusive—Constitution.**

But *held*, it is not constitutional for the legislature to make such
weighing conclusive, but the same can be impeached only when the
party complaining was himself free from fault or negligence, and when
it is demonstrated by clear, strong and satisfactory evidence that there
was, in fact, a substantial mistake in the weighing.

Action in the district court for St. Louis county to recover
$869.64, the value of 1,062 bushels of wheat. The cause was tried
before Moer, J., who directed the jury to return a verdict for de-
fendant. From an order denying a motion for a new trial, plaintiff
appealed. Reversed.

*Searle & Spencer*, for appellant.

A mutual mistake is a mistake reciprocal and common to both
parties, where each alike labored under the same misconception of
facts. Botsford v. McLean, 45 Barb. 478. Where parties contract
under the impression that a certain state of facts exists, equity
has power to relieve them from the effects of such a contract.
Shafer v. Davis, 13 Ill. 395; Mays v. Dwight, 82 Pa. St. 462; Fleet-

wood v. Brown, 109 Ind. 567. Equity will grant relief on the ground of mistake, not only when it is expressly proved, but also when it may be inferred from the nature of the transaction. Geib v. Reynolds, 35 Minn. 331; City of Duluth v. McDonnell, 61 Minn. 288; Cobb v. Cole, 51 Minn. 48; Lane v. Holmes, 55 Minn. 379. If a mistake did occur as plaintiff contends, then defendant has 1,062 bushels of wheat that do not belong to it, and its refusal to deliver or make good after demand, constitutes a conversion for which this action will lie. G. S. 1894, § 7648; 2 Addison, Torts, 461; Adams v. Castle, 64 Minn. 505. The defendant was a bailee. G. S. 1894, § 7645; Weiland v. Krejnick, 63 Minn. 314; St. Paul & S. C. R. Co. v. Gardner, 19 Minn. 99 (132).

The plaintiff, having become surety for the shippers and made good the loss, became subrogated to the rights of the shippers in respect to the shortage, and is entitled to demand and recover from the defendant the balance of the grain or its value. Sawyer v. Cleveland Iron Min. Co., 69 Fed. 211; 1 Brandt, Sur. § 260; Swarthout v. Chicago, 49 Wis. 625; Heisler v. C. Aultman & Co., 56 Minn. 454. The right of subrogation is a creature of equity. Felton v. Bissel, 25 Minn. 15; Emmert v. Thompson, 49 Minn. 386; Travers v. Dorr, 60 Minn. 173; Memphis & Little Rock R. v. Dow, 120 U. S. 287. No formal assignment to plaintiff was necessary. The payment operated as an equitable assignment. Connecticut v. Erie, 73 N. Y. 399; Swarthout v. Chicago, supra; McArthur v. Martin, 23 Minn. 74; Emmert v. Thompson, supra.

If G. S. 1894, § 7675, is in force to the exclusion of sections 7705, 7706, and makes the action and certificates of the weighmaster conclusive, then the act is unconstitutional. See Cooley, Const. Lim. (6th Ed.) 452; Groesbeck v. Seeley, 13 Mich. 329; White v. Flynn, 23 Ind. 46; Abbott v. Lindenbower, 42 Mo. 162; McCready v. Sexton, 29 Iowa, 356; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418.

*Davis, Kellogg & Severance,* for respondent.

Every person having grain weighed at terminal elevators of this state makes the law of this state a part of his contract. The right of parties so to contract as to make a certain person the sole and

exclusive judge of any matter which may be submitted to him as to amounts or weights is well settled. Shaw v. First Baptist Church, 44 Minn. 22; Langdon v. Northfield, 42 Minn. 464; St. Paul & N. P. Ry. Co. v. Bradbury, 42 Minn. 222; Leighton v. Grant, 20 Minn. 298 (345).

CANTY, J.

Plaintiff is a common carrier of freight on the Great Lakes, between Duluth and Buffalo. Defendant owns and operates a public elevator at the dock in Duluth, in which the wheat of different parties is stored, commingled in a common mass.

On October 20, 1896, Spencer, Moore & Co. proceeded to ship from Duluth to Buffalo, on plaintiff's steamship, the Vega, 97,587 bushels of wheat. This wheat was stored in said elevator, and, while being delivered from the elevator to the ship, was weighed out by the assistant state weighmaster, under the laws of Minnesota. The cargo of wheat was delivered at Buffalo, but it is claimed that it fell short in weight, and that, by reason of mutual mistake in weighing the wheat at Duluth, 1,062 bushels less than the required amount were delivered on board the ship. The bills of lading delivered by plaintiff to Spencer, Moore & Co. contain the following provisions:

"All the deficiency in cargo to be paid by the carrier, and deducted from the freight, and any excess in the cargo to be paid for to the carrier by the consignee."

When the wheat was delivered at Buffalo to Spencer, Moore & Co., the consignees, they deducted from the freight the sum of $869.64, the market value of the 1,062 bushels; and plaintiff brought this action to recover this amount from defendant.

On the trial the court ordered a verdict for defendant, and, from an order denying a new trial, plaintiff appeals.

1. We are of the opinion that, by reason of said clause in the bill of lading, plaintiff was an insurer that the amount of wheat called for had been delivered to it, and would be redelivered at the end of the route; and, when plaintiff paid the consignee for the deficiency, any cause of action held by the consignee therefor against defendant passed, by subrogation, to plaintiff.

2. Defendant claimed it had delivered the amount called for by the bills of lading. Elevator receipts for that amount were surrendered at the time.

On the trial, plaintiff offered to prove that there were in fact delivered from the elevator to the ship, at Duluth, 1,062 bushels less wheat than the bills of lading called for. Defendant objected to the offer, and the court sustained the objection. This is assigned as error. G. S. 1894, § 7675, provides:

"Said state weighmaster and assistants shall, at the places of St. Paul, Minneapolis, Duluth and St. Cloud, supervise and have exclusive control of the weighing of grain and other property which may be subject to inspection, except when otherwise ordered or directed by the party shipping the same, and the inspection of scales; and the action and certificates of such weighmaster and his assistants in the discharge of their aforesaid duties shall be conclusive upon all parties, either in interest or otherwise, as to the matters contained in said certificates."

It seems that the trial court held that, under this section, the result arrived at by the state weighmaster in weighing this wheat at Duluth is conclusive, and cannot be questioned in this action. In answer to this, appellant cites section 7706, which is a part of the same act, and reads as follows:

"Said weighmaster and assistants shall give upon demand to any person or persons having weighing done, a certificate under his hand and seal, showing the amount of each weight, number of car or cars weighed, if any, the initial of said car or cars, place where weighed, date of weighing and contents of car. And it is hereby provided that said weighmaster's certificate shall be admitted in all actions, either at law or in equity, as prima facie evidence of the facts therein contained, but the effect of such evidence may be rebutted by other competent testimony."

These two sections are in pari materia, and must be construed together. They are in some respects in direct conflict with each other, but that conflict must be reconciled if it is reasonably possible to do so.

Section 7675 does not attempt to make anything conclusive but the weight ascertained and the certificate of that fact, and does not provide for certifying to other facts. Section 7706 provides for certifying to a number of other facts, such as the number of cars,

the initials of the car or cars, the contents of the car or cars, and the place where weighed. When these additional facts are certified to, the certificate itself is only prima facie evidence of any fact therein certified. But, if the weight is proved by competent evidence other than the certificate provided by section 7706, the intent of the statute is that such weight shall be conclusive.

3. But is it competent for the legislature to make the weight thus ascertained absolutely conclusive? We are of the opinion that it is not. The legislature cannot in this manner provide for the arbitrary exercise of power, so as to deprive a person of his day in court to vindicate his rights. And the law which closes his mouth absolutely when he comes into court is the same, in effect, as the law which deprives him of his day in court. See Cooley, Const. Lim. (6th Ed.) 452; 6 Am. & Eng. Enc. (2d Ed.) 1050; Graves v. Northern, 5 Mont. 556, 6 Pac. 16; Johns v. State, 55 Md. 350; Wantlan v. White, 19 Ind. 470.

But we must give to the legislative intent the utmost effect which the constitution will permit. The statute in question is a police regulation. The business of storing and handling grain in such an elevator is affected with a public interest, is merely a link in the chain of commerce, and may be regulated by the legislature to a very considerable extent. See Munn v. Illinois, 94 U. S. 113, 126.

The legislature has the right to give to the act of the weighmaster in weighing grain a high character as evidence, and to provide that such act can be impeached only when the party complaining or the party under whom he claims was himself free from fault or negligence, and when it is demonstrated by clear, strong and satisfactory evidence that there was in fact a substantial mistake in the weighing. No trivial error or trivial variation between different weights is sufficient to impeach the weighing of the state weighmaster; but the alleged error in this case is 1,062 bushels in a total of 97,587, and that is sufficiently substantial.

In our opinion the case is not exactly parallel to one where the parties, by voluntary contract, provide for an umpire to decide on the matters which will arise between them. There the decision of the umpire can only be impeached for fraud or such gross mis-

take as would imply bad faith or a failure to exercise an honest judgment. Leighton v. Grant, 20 Minn. 298 (345); St. Paul & N. P. Ry. Co. v. Bradbury, 42 Minn. 222, 44 N. W. 1; Langdon v. North-field, 42 Minn. 464, 44 N. W. 984; Shaw v. First Baptist Church, 44 Minn. 22, 46 N. W. 146.

Under the statute, the party running the elevator has no option as to whether or not the state weighmaster shall weigh the grain; and, in our opinion, the state cannot force an umpire upon such party against his will, and then close his mouth, so that he cannot show that the umpire has made a substantial mistake, whether that mistake is the result of fraud or bad faith, or merely of negligence.

Under the constitution, no sound distinction can be made on the difference between a case of bad faith and a case of mere negligence. If a gross error has been committed, and his mouth is closed by the statute, he will be deprived of his property without due process of law, whether the error is the result of bad faith or not. True, in this case, the party running the elevator is not the one who is complaining. The plaintiff is enforcing merely the rights of the shipper, with whom, under G. S. 1894, § 7675, it is optional whether the grain shall be weighed by the state weighmaster or not.

The law does not force this statutory umpire upon the shipper. The umpire is one of his own selection; and it may be contended that, as to him, the case is the same as that of a case where the parties voluntarily agreed on an umpire, and that, therefore, he cannot impeach the weighmaster's decision without showing fraud or such gross mistake as will imply bad faith. But the statute never intended to make the weighing conclusive as to the shipper, and not conclusive as to the party operating the elevator. In this respect the rights of the parties should be held to be mutual and reciprocal, and the weighmaster's decision no more conclusive as to the one than it is as to the other. The legislature never intended to give the party running the elevator an advantage in this respect. The weighing contemplated by the statute is a weighing in the course of delivery, and as a part of that delivery. There are three parties to the transaction,—the shipper, the elevator keeper, and the state weighmaster, who is umpire for the other two.

In this case the weighmaster was acting as umpire for the ship-

per and defendant; but, by reason of said clause in the bill of lading guarantying the weight, the plaintiff stepped into the shoes of the shipper in attending to the weighing and delivery of the wheat. Then, if plaintiff can, by clear, strong and satisfactory evidence, prove the alleged error as a demonstrable mistake of fact, and can further prove that it was not guilty of any fault or negligence which contributed to that error, it should have been allowed to do so. Plaintiff should have been allowed to introduce the offered evidence.

The order appealed from is therefore reversed, and a new trial granted.