38 N.J. Super. 174 (1955)
118 A.2d 121
HOWARD SAVINGS INSTITUTION, ETC., AND FRANKLIN SAVINGS INSTITUTION OF NEWARK, N.J., PLAINTIFFS,
v.
MARIA QUATRA, AN INFANT, ETC., AND ROSE QUATRA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 9, 1955.
*175 Messrs. Smith, Slingerland, Trauth & Holtz (Mr. David Trauth, appearing), attorneys for plaintiffs.
Mr. James R.E. Ozias, guardian ad litem of defendant Maria Quatra, an infant, pro se (Mr. Stuart A. Yaung, Jr., of counsel).
Mr. Jack Trugman, attorney for defendant Rose Quatra (Mr. Samuel H. Nelson, of counsel).
*176 DREWEN, J.C.C. (temporarily assigned).
Suit is brought by the plaintiff banks primarily for instructions respecting the disposition of funds in the "trust deposit" account opened in each of them by decedent Tom Quatra in his lifetime. The plaintiff institutions will be referred to respectively as Franklin and Howard.
The account in Franklin was opened October 4, 1948, under the designation "Tom Quatra, in trust for Maria Quatra, daughter." Said Maria Quatra is a minor. The account in Howard was opened May 28, 1951 under the designation "Tom Quatra in trust for Mary Anna Quatra." On April 10, 1953 decedent made a withdrawal from the Franklin account and at his death there was a balance remaining of $311.64. On July 2, 1953 he withdrew from the Howard account the sum of $1,000, and at his death there was a balance there remaining of $17,273.28. Decedent died September 23, 1953, leaving a last will and testament in which provision is made for each of his children, for his widow, the defendant Rose Quatra, and for his adopted daughter, the said Mary Anna Quatra. The will disposes of his entire estate, though it makes no mention as such of either of said deposit accounts. The plaintiff Howard was named executor and has qualified.
The widow contends that the funds remaining in the two accounts should be paid to the executor for distribution under the will. The infant daughter contends that title to those funds passed to her upon decedent's death and that they should be disbursed accordingly. The latter contention is based upon the claimed effect of pertinent statutes in force at the time the accounts were opened. Two statutes are here involved. That which governs the Franklin account is L. 1948, c. 67 (Art. 35, par. 216); that governing the Howard account is L. 1949, c. 286 (R.S. 17:9A-216). We shall consider the Howard account first.
The statute (supra) in effect at the time the Howard account was opened provides inter alia as follows (italics supplied):
*177 "A. A banking institution may accept demand or time deposits in the name of an individual depositor as trustee or in trust for a named beneficiary. The depositor, by making such deposits, shall conclusively be presumed to intend to declare and create a trust of such deposits and of any credits of interest, for the beneficiary, with the depositor as trustee, upon the following terms:
(1) the trust shall be revocable by the trustee at will, during the life of the beneficiary, but only by and to the extent of withdrawals by the trustee of funds of the trust during the trustee's life, as to which withdrawals no notice to or consent of the beneficiary shall be required;

* * * * * * * *
(3) if the beneficiary survives the trustee, the trustee's death shall terminate the trust and any funds then to the credit of the trust and any interest credits shall vest indefeasibly in the beneficiary, notwithstanding any one or more of the following, viz.: declarations by the trustee as to his intention in declaring, creating and maintaining the trust or as to the terms of the trust or other evidence contrary to the trustee's conclusively presumed intention, retention of control by the trustee over the evidence of and the funds of the trust, personal use by the trustee of funds of the trust, lack of notice by the trustee to the beneficiary as to the creation and maintenance of the trust, any attempted testamentary disposition by the trustee of funds of the trust, or any other attempted disposition by the trustee of funds of the trust by gift, assignment, pledge or otherwise;

* * * * * * * *
(5) if the beneficiary survives the trustee and is under eighteen years of age at the trustee's death the banking institution may pay the funds to the credit of the trust and any credits of interest
(a) to the beneficiary or upon his order when or after he becomes eighteen years of age, or
(b) to the legal guardian of the beneficiary, wherever appointed, or
(c) if a certificate of appointment of a legal guardian is not filed with the banking institution, to a person authorized to receive such moneys pursuant to section 3:7-29 of the Revised Statutes;

* * * * * * * *
B. A banking institution which makes any payment pursuant to subsection A shall, to the extent of such payment, be released from all claims of the trustee, the beneficiary, their legal representatives, and all persons claiming under or through them."
It is urged by the defendant widow that the quoted enactment infringes constitutional guarantees and is thus invalid. More particularly it is contended that the statute (a) denies due process of law; (b) denies the equal protection *178 of the law; (c) that its title is fatally defective under the canon of Article IV, Section VII, par. 4 of the Constitution of New Jersey, 1947. I judge the contention for unconstitutionality to be valid under each of the three heads stated. The statute arbitrarily admits of but one way to revoke the trust, i.e., complete withdrawal of the funds by the trustee in his lifetime; and by its terms the presumed trust shall endure "notwithstanding any one or more of" the positively revocatory acts enumerated in the quoted text supra, including that of actual testamentation. The statute, in a word, interdicts all allowance for judicially determinable mistake, misunderstanding or revocation of any kind. And as for its pretermission of revocation save in the manner it allows, it goes, as already stated, so far as to defeat pro tanto the operation of the statute of wills. It has been repeatedly held by our courts that the essentials of a gift in praesenti and of an inter vivos trust are: (1) that the donative intent be manifest; (2) that there be such delivery as the subject matter in its nature is capable of; and (3) that there be a complete divesting of control, title and benefit by the donor or trustor. Without regard to any one of these prescribed components, the statute creates what amounts to a testamentary trust and does so in contradiction of the law of wills. Intent is a question of fact and mere form does not control it. Howard Savings Institution v. Baronych, 8 N.J. Super. 599 (Ch. Div. 1950). To deny to courts the right to inquire into the factual question of intent, for no other or better reason than that a statutorily prescribed form has been complied with, is plainly and simply to deny due process of law. The statute institutes an arbitrary fiction invested with harmful potency and does so in the absence of adequate purpose or necessity. The statutory vice here discerned becomes all the more obvious, I think, when contemplated as the expression of a presumed lawmaking faculty enabling the legislature to declare a thing, by mere device of irrevocable presumption, to be something other than it truly is. A vista of startling possibilities in the way of judicial ouster is thus disclosed.
*179 "The creation of a conclusive presumption by the legislature violates several constitutional principles. It may constitute a deprivation of due process of law and of the equal protection of the law and an invasion of the province of the judiciary." (Cases cited) 162 A.L.R., at page 517. The pith of the matter is well stated in a text from Wigmore:
"(2) * * * The judicial function under the constitution is to apply the law in controverted cases; to apply the law necessarily involves the determination of the facts; to determine the facts necessarily involves the investigation of the evidence as a basis for that determination. To forbid investigation is to forbid the exercise of an indestructible judicial function. Hence, to make a rule of conclusive evidence, compulsory upon the Judiciary, is to attempt an infringement upon their exclusive province." Wigmore on Evidence (3d ed. 1940), par. 1353, p. 715.
Supporting authorities are in numerous accord. 51 A.L.R. 1149; 86 A.L.R. 182; 162 A.L.R. 516b, 517; 2 Cooley on Constitutional Limitations (8th ed.), 769, note 2, p. 770, note 1; 16 C.J.S., Constitutional Law, § 621, p. 1263, note 71, p. 1264, notes 72, 73, 74, 75, 76; Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932); Handy v. Delaware Trust Co., 285 U.S. 352, 52 S.Ct. 371, 76 L.Ed. 793 (1932); White v. Hall, 53 F.2d 210 (1st Circ. 1931), certiorari denied 285 U.S. 553, 52 S.Ct. 410, 76 L.Ed. 943 (1932); Vega Steamship Co. v. Consolidated Elevator Co., 75 Minn. 308, 77 N.W. 973, 43 L.R.A. 843 (Sup. Ct. 1899); Rich Hill Coal Co. v. Bashore, 334 Pa. 449, 7 A.2d 302 (Sup. Ct. 1939); Ex parte Allen, 82 Vt. 365, 73 A. 1078, 26 L.R.A., N.S., 232 (Vt. Sup. Ct. 1909); People ex rel. Hillel Lodge No. 72, I.O.B.B. v. Rose, 207 Ill. 352, 69 N.E. 762 (Sup. Ct. 1904); People v. Love, 310 Ill. 558, 142 N.E. 204 (Sup. Ct. 1924); cf. Langenohl v. Spearen, Preston & Burrows, 22 N.J. Super. 392 (App. Div. 1952).
In Heiner v. Donnan, supra, the United States Supreme Court said, at page 324 of 285 U.S., at page 360 of 52 S.Ct.:
"There is no doubt of the power of Congress to provide for including in the gross estate of a decedent, for purposes of the death tax, the value of gifts made in contemplation of death; and likewise *180 no doubt of the power of that body to create a rebuttable presumption that gifts made within a period of two years prior to death are made in contemplation thereof. But the presumption here created is not of that kind. It is made definitely conclusive  incapable of being overcome by proof of the most positive character. Thus stated, the first question submitted is answered in the affirmative by Schlesinger v. State of Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557, and Hoeper v. Tax Commission, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248."
At pages 325-326 of 285 U.S., at page 360 of 52 S.Ct.:
"* * * The Schlesinger case has since been applied many times by the lower federal courts, by the Board of Tax Appeals, and by state courts; and none of them seem to have been at any loss to understand the basis of the decision, namely, that a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment.
"Nor is it material that the Fourteenth Amendment was involved in the Schlesinger case, instead of the Fifth Amendment, as here. The restraint imposed upon legislation by the due process clauses of the two amendments is the same."
At page 329 of 285 U.S., at page 362 of 52 S.Ct.:
"* * * A rebuttable presumption clearly is a rule of evidence which has the effect of shifting the burden of proof, * * * and it is hard to see how a statutory rebuttable presumption is turned from a rule of evidence into a rule of substantive law as the result of a later statute making it conclusive. In both cases it is a substitute for proof; in the one open to challenge and disproof, and in the other conclusive. However, whether the latter presumption be treated as a rule of evidence or of substantive law, it constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality, and the result is the same, unless we are ready to overrule the Schlesinger case, as we are not; for that case dealt with a conclusive presumption, and the court held it invalid without regard to the question of its technical characterization. This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment.
* * * If a legislative body is without power to enact as a rule of evidence a statute denying a litigant the right to prove the facts of his case, certainly the power cannot be made to emerge by putting the enactment in the guise of a rule of substantive law."
*181 While the instant question appears to be of novel impression in this State, there is in the opinion of our Appellate Division in Langenohl v. Spearen, Preston & Burrows, supra, a significant proviso having direct bearing on the problem:
"It is generally held that there are no vested rights in rules of evidence, and provided that a party is not deprived of his right to present his side of the case, such rules may be modified or repealed even though the changes are made applicable to accrued or pending actions. The Legislature may establish the requisites of a prima facie case, enact rules of presumption as to the inferences to be drawn from certain states of fact, or shift the burden of proof from one party to the other." (Italics supplied.)
Appropriate commentary on the latter excerpt is that "rules of presumption" are one thing  presumptions are all normally revocable  the establishment of irrevocable presumptions is categorically quite another thing.
There is no analogy between the problem now presented and those dealt with in the decisions which uphold conclusive presumptions arising from bank accounts in joint deposit cases. In such instances there is, in fact as well as in theory, a gift in praesenti with rights in both parties accruing at once; and there is in them no supercession of the judicial office in the law of trust revocation and of wills.
A notable case that appears to be divergent from the line of decisions but truly is not so, is In re Totten, 179 N.Y. 112, 71 N.E. 748, 70 L.R.A. 711 (Ct. App. 1904). The opinion there develops the artifice of "tentative trust," tentative during depositor's lifetime becoming absolute upon his death. As for the principle of irrevocable presumption, it is rejected in the case; and apparently no statutory or constitutional question was presented.
The statute under consideration also infracts glaringly, I think, the constitutional canon respecting equal protection of the law. The disparity it creates in the general dependence upon evidence of intent or of revocation, in the matter of trusts, is obvious. In the brief submitted for defendant Rose Quatra counsel cogently posits an illustrative contrast between the case of one designated by written memorandum, *182 attached to a fund of money in a safe deposit box, that the fund is held in trust for the said designee, the owner of the fund in no way impairing his use or ownership thereof; and the case, per contra, of one opening an account with a bank subject to the terms of the statute under review. Though in "similar circumstances" (Washington Nat. Ins. Co. v. Board of Review, etc., infra) the one named beneficiary in the statutory transaction would take the fund remaining at the donor's death, while the "beneficiary" in the other transaction would not.
In Washington Nat. Ins. Co. v. Board of Review, etc., 1 N.J. 545, at page 553 (1949), it is said: "The equal protection clause means that the right of all persons must rest upon the same rule under similar circumstances * * *." I think there is not to be discerned any inherent or essential difference in the general circumstances, dependent upon whether the transaction is a bank deposit transaction or one that is strictly not such.
Article IV, Section VIII, par. 4 of the 1947 State Constitution provides:
"To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title. * * *"
Whatever other or different design may be ascribed to the statute in question it cannot be denied that it operates with immediate directness toward the fiat creation of a projected testamentary disposition. An inescapable alternative is presented. Either the statute is a valid amendment of the Wills Act or it is a substantial encroachment upon the Wills Act. And whether it is one or the other, the fact remains that the title in no way relates to the subject of wills but categorically to that of banking. The situation presented here is not at all to be palliated or explained by the line of cases which affirm the principle that the title of a legislative enactment is to be deemed a label and not an index. The title of the statute is "An Act to Amend `the Banking Act of 1948'"; yet *183 subordinately to its ostensible design the statute operates to establish its own form of testamentary money bequest. See Phelps Dodge Copper Products Corp. v. United Elec., etc., Workers, 138 N.J. Eq. 3 (Ch. 1946), affirmed Westinghouse Electric Corporation v. United Electrical, etc., 139 N.J. Eq. 97 (E. & A. 1946). It has been recognized by our courts that antecedent enactments, less drastic than that under review, are creative of testamentary disposition. Stevenson v. Earl, 65 N.J. Eq. 721 (E. & A. 1903); Johnson v. Savings Inv., etc., Co., 107 N.J. Eq. 547 (Ch. 1931), affirmed 110 N.J. Eq. 466 (E. & A. 1932); Bendix v. Hudson County Nat. Bank, 142 N.J. Eq. 487 (E. & A. 1948); Cutts v. Najdrowski, 121 N.J. Eq. 546 (Ch. 1937); Travers v. Reid, 119 N.J. Eq. 416 (Ch. 1936); Thatcher v. Trenton Trust Co., 119 N.J. Eq. 408 (Ch. 1936).
Chapter 286 of the Laws of 1949 (R.S. 17:9A-216), in effect upon the opening of the Howard Bank account, I find, for the reasons stated, to be unconstitutional and therefore void. In the absence of that statute the Howard transaction sub judice is governed by the next preceding statute in point, i.e., chapter 67 of the Laws of 1948 (art. 35, par. 216). The 1948 enactment is not essentially different from the statute that preceded it, i.e., R.S. 17:9-4, dealt with in Bendix v. Hudson County Nat. Bank, supra. In that case the Court of Chancery had found in the statute an intent to create an irrevocable presumption and adjudged the cause accordingly. The reviewing court reversed, finding that the statute embodied no more than a rebuttable presumption. The decision casts strong light upon the instant problem. At most, in the light of the Bendix decision, the 1948 statute, supra, applicable to the Howard transaction, raises a rebuttable presumption of depositor's intent with respect to the creation of a trust, in favor of the named beneficiary, of the funds remaining in the account at the time of depositor's death.
We come now to the Franklin account. When that account was opened the same statute as that last considered (L. 1948, 67) was in effect. What has already been said of that *184 enactment in connection with the Howard account has equal application to the Franklin account. As in the case of the Howard account a rebuttable presumption is raised.
Unless counsel stipulate that the court shall proceed to resolve the rebuttable questions outlined above on the basis of the facts embodied in the case as already submitted, the matter will be set down for the taking of testimony.