JOHN F. RUSH, administrator of the estate of Catherine D. Rush, deceased, complainant-respondent,

*v.*

THOMAS E. RUSH, defendant-appellant.

[Argued May 24th, 1946. Decided October 14th, 1946.]

*Mr. Charles S. Smith,* for the appellant.

*Mr. Edward R. McGlynn,* for the respondent.

The opinion of the court was delivered by

HEHER, J.

The subject of controversy here is the title to three bank accounts standing jointly in the names of Catherine D. Rush and her son, Thomas E. Rush, the appellant, at the time of the former's death, intestate, on October 30th, 1944.

Originally, these accounts were in the name of Catherine, and all the moneys deposited therein were her property; and the learned Vice-Chancellor ruled that the later transfers of the accounts to Catherine and her son, jointly, did not constitute gifts of interests therein to the son *in præsenti;* that the transfers were not accompanied by a surrender of "control or dominion over the bank accounts," and that they were made "only for the convenience of the deceased."

The first transfer was made on October 18th, 1938. An account in the Lincoln National Bank, containing the sum of $1,508.20, was placed in the names of "Catherine Dugan Rush or Thomas E. Rush," who endorsed the following on the signature card, over their signatures: "We, the undersigned, hereby certify that this account and all moneys which may hereafter be credited to it belong to us as joint tenants, and that either of us may draw the whole or any part of same, and that upon the death of either of us, said moneys will thereupon be the absolute property of the survivor of us." The balance in this account at the time of Catherine's death was $1,486.26.

On July 13th, 1944, a deposit in The Howard Savings Institution, amounting to $2,082.33, was transferred to "Catherine D. Rush and Thomas E. Rush, 7/13/44, payable to either or survivor." The following was endorsed on the signature card, above Catherine's signature: "7/12/44 Kindly

add the name of Thomas E. Rush to my account number 526546—make same payable to either or survivor." The balance remaining on deposit when Catherine died was $1,537.03.

On July 14th, 1944, an account in the Fidelity Union Trust Company, amounting to $1,120.51, was transferred to "Catherine Dugan Rush or Thomas E. Rush—either or survivor." The signature card contains the following notation over the signatures of Catherine and her son: "Changed to Joint Acct. 7-14-44;" and also the following statement, likewise authenticated by the signatures of Catherine Dugan Rush and Thomas E. Rush: "This account and all moneys to be credited to it belong to us as joint tenants, and will be the absolute property of the survivor of us: payment to survivor subject to inheritance tax waiver; either or the survivor to draw." There was endorsed on the back of the signature card, also over the signatures of Catherine and Thomas, under date of July 10th, 1944, the following: "We do each appoint the other attorney to endorse in the name of the payee any check, draft or note payable to the other, and to deposit the same in this account; such power may be revoked only by written notice to said Trust Company." The balance in this account was unchanged at the time of Catherine's death.

Neither the form nor the content of these accounts is, in itself, conclusive of the issue of title and ownership. If the survivor here has any interest in these deposits, it derives from a gift *inter vivos* and not from a contract between the co-depositors *inter se;* and a gift, in turn, derives its legal efficacy from the intention of the donor. The form yields to the substance; the intent is the life of the act. Gifts *mortis causa* are those made in prospect of death. Gifts *inter vivos* have no reference to the future, and go into immediate and absolute effect. *2 Kent's Com. 438.* Gifts *inter vivos* and gifts *causa mortis* differ only in the circumstance that the latter are made in apprehension of death, become effectual only upon the death of the donor, and may be revoked; otherwise, the same principles apply to each. *Dresser v. Dresser, 46 Me. 48; Robson v. Jones, 3 Del. Ch. 51; Young v. Young, 80 N. Y. 422.* The requisites of a valid gift *inter vivos* are: First, a donative intent on the part of the donor; second, an

actual delivery of the subject-matter of the gift unless it be a *chose in action*, in which case the delivery must be of that variety of which it is most capable; and, third, the donor must strip himself of all ownership and dominion over the subject-matter of the gift. *Bankers' Trust Co.* v. *Bank of Rockville Center Trust Co., 114 N. J. Eq. 391.* In the case of a bank pass book, evidencing a transfer to a joint account, this last requirement is satisfied if there be a surrender by the donor of dominion and control commensurate with the nature and the *quantum* of the interest transferred.

If the design of the transferor was not an immediately effective gift, but a transfer merely for convenience of withdrawal, with retention in himself of full ownership and absolute dominion over the fund or *chose in action* until his death, the transferee to take the balance of the credit in the event of his survival, without any present interest in the deposit, there was not a gift *in præsenti;* and the gift in case of survival, *i. e.,* to take effect upon the death of the transferor, would be testamentary in character and void for non-conformance with the statute of wills. *Vide Stevenson* v. *Earl, 65 N. J. Eq. 721; McCullough* v. *Forrest, 84 N. J. Eq. 101.* The requisites of an enforceable gift are absent in such case. There is not, for instance, that divestment of dominion essential to a valid gift; the act is essentially testamentary, and revocable.

Thus, a gift of a bank deposit in terms either of common ownership or of joint tenancy in but *prima facie* evidence of an intention to make a gift *in præsenti;* and the writing succumbs to proof in quality sufficient to overcome that presumption. This is the rationale of the case of *New Jersey Title Guarantee and Trust Co.* v. *Archibald, 91 N. J. Eq. 82.* There, it was not intimated that the actual intent was contrary to the written expression. The holding, in substance, was that the writing revealed "a donative purpose," not one "merely for use and convenience of the donor;" and thus, presumably, there was a valid gift in the absence of evidence *contra.* Such was the *ratio decidendi* of the later case of *Commercial Trust Co.* v. *White, 99 N. J. Eq. 119; affirmed, 100 N. J. Eq. 561.* There is no reason in principle why this should not be so—no reason why the outward form should be

vitalized contrary to the real, discoverable intention. The rule is thus expressed by Vice-Chancellor Stevenson in *Schippers* v. *Kemphes, 67 Atl. Rep. 1042; affirmed, 72 N. J. Eq. 948:* "But no external form of a gift, no delivery, if the subject-matter of the gift be a chattel, no contract on the part of the third party, if the alleged gift be like the one which we are now considering, has any sufficiency, if the donative purpose be lacking." See, also, *Trenton Savings Fund Society* v. *Byrnes, 110 N. J. Eq. 617; Morristown Trust Co.* v. *Capstick, 90 N. J. Eq. 22; affirmed, sub. nom. Morristown Trust Co.* v. *Safford, 91 N. J. Eq. 152; Kaufman* v. *Edwards, 92 N. J. Eq. 554;* also *149 A. L. R. 880.*

*R. S. 17:9–5* does not give rise to a conclusive presumption of a gift of a present beneficial interest in the deposit, with the right of survivorship that is an incident of a joint tenancy, where words of joint tenancy or joint ownership are employed in the creation of the account. It lays down a rule of evidence rather than of substantive law. Apart from the measure of protection afforded the bank depository in the making of payments from joint accounts, which would seem to be its primary function, the act at the most raises a rebuttable presumption of the survivor's title to the balance of the credit in case of the death of either, where the deposit has been made in the name of two persons, "payable to either, or payable to either or to the survivor." Such constitutes presumptive evidence of an interest by survivorship which stands until overthrown by proof *contra*. It is inconceivable that the legislature intended to raise an irrebuttable presumption of what is in effect a joint tenancy where, for instance, the account is merely made payable "to either" of the co-depositors. This simply evidences an intent that either may draw from the account. The statute does not purport to render the contract between the bank and the co-depositors, as revealed by the pass book or book entries, conclusive evidence of the depositors' interests *inter se*. A legislative design, on grounds of public policy or for the protection of individuals, to attach legal consequences to an agreement between the bank and such depositors contrary to the mutual intention of the depositors *inter se, i. e.,* to impose a contract which the parties did

not make, is to be expressed in language admitting of no doubt of the purpose if it is to be effectual, assuming no invasion of due process or the fundamental liberty of contract. For example, a New York statute provided that deposits made by one in his name and that of another, payable to either or the survivor, should become the property of such persons as joint tenants, that the bank would be discharged by the payment of the whole to either of such persons, whether the other was living or not, and that in any action to which the bank or the survivor was a party, the making of such a deposit, in the absence of fraud or undue influence, would constitute conclusive evidence of the intention of both persons to vest title to the deposit in the survivor; and it was held that a deposit in the statutory form constituted only presumptive evidence of an intention to create a joint tenancy as between the two during their lifetime, but that, after the depositor's death, the presumption became conclusive in favor of the survivor's title to the deposit. *Moskowitz* v. *Marrow, 251 N. Y. 380; 167 N. E. Rep. 506; 66 A. L. R. 870.* See, also, *Heiner* v. *Greenwich Savings Bank, 118 Misc. Rep. 326; 192 N. Y. Supp. 291.* Since they are in derogation of the common law, such statutes are to be strictly construed. *48 A. L. R. 195; 66 A. L. R. 884; 108 A. L. R. 1128.*

The statute dealing with savings banks has reference only to the protection of the bank in the payment of moneys deposited in accounts of this class to either of the co-depositors, even though the other be deceased. *R. S. 17:9–5.1. Vide Lester* v. *Guenther, 134 N. J. Eq. 53; Gordon* v. *Toler, 83 N. J. Eq. 25.*

Here, the title asserted by the transferee must necessarily arise from gifts rather than contracts between the depositors; and the weight of the evidence is against the existence of the requisite donative intent in each instance. The decedent was survived by eight children, some of whom no doubt made contributions to her mundane possessions. She was about eight-five years of age, and for a long time had suffered the infirmities and failing faculties which usually attend old age. Until a very short time before her death she lived with another son, in a house which they owned jointly, and she paid her

share of the taxes assessed against the property. This was the sum of her material wealth. The moneys on deposit with the Fidelity Union Trust Company and the Howard Savings Institution were transferred to the joint accounts shortly before her death, on the eve of her departure for a hospital. Appellant testified that his mother said to him, in the presence of his wife: "There is (*sic*) two bank accounts that I want you to put your name on with me and as a present from me;" but his wife quoted her as saying that "She was going to the hospital and that she wanted things taken care of, and she says, 'I am going to put his name on the book and when I want a dollar he can get it for me.'" It is evident from this that the appellant's name was added to the accounts for convenience of withdrawal merely, and not to vest in him a beneficial interest in the subject-matter. Indeed, this conversation occurred in connection with appellant's withdrawal of $100 from the Savings Institution account, for his mother's use, just prior to her admittance to the hospital. And it is equally clear that the transfer of the account in the Lincoln National Bank to their joint names was not motivated by a donative purpose. This was associated, it is fairly inferable, with an endeavor to accelerate payments by a defunct building and loan association, of which she was a shareholder. It was a device to simulate a measure of need; and the evidence indicates the suggestion came from appellant. But however this may be, we are convinced that there was no intention to vest ownership in appellant. The weaknesses of age were progressive, and she had an increasing sense of dependency upon others in matters of business. The circumstances attending the later transfers serve to illuminate and characterize the motive for the first. She retained all the pass books in her possession throughout, with the exception of the Lincoln bank book, of which appellant had custody for but a brief period after the transfer. *Vide 149 A. L. R. 881.*

There is no discernible reason for the claimed gifts. Appellant testified that the transfers were made as "presents" for what he had "done" for his mother; but there was no specification except that "at various times" his mother "was ill." There is nothing in the proofs to suggest that his brothers

and sister were at all remiss in this regard. The Vice-Chancellor had the decided advantage of personal observation of the parties and the witnesses and their demeanor on the witness stand.

And appellant's conduct subsequent to his mother's death was utterly inconsistent with the current claim of ownership of the bank deposits. Although his mother died seized of a half interest in the real property which she occupied prior to her death, appellant withdrew moneys from the bank accounts, or some of them, to defray expenses properly chargeable to the estate; and at a family conference called to arrange for the appointment of an administrator and the settlement of the affairs of the estate, he did not inform his brothers and sisters of the gifts now alleged. He admits he withheld this information, although he said that a few days before he advised two of his brothers that such gifts had been made. This the brothers denied. And the transfers were not divulged in the inheritance tax return; there was no claim of title to the bank credits.

Decree affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, OLIPHANT, WACHENFELD, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, McLEAN, JJ. 14.

*For reversal*—None.