DOROTHY BENDIX, complainant-respondent,

*v.*

HUDSON COUNTY NATIONAL BANK, defendant-appellant.

[Submitted February 13th, 1948.   Decided May 13th, 1948.]

*Messrs. Milton, McNulty & Augelli (Mr. Anthony T. Augelli,* of counsel), for the appellant.

*Messrs. Vickers & Castelli (Mr. Felice Castelli,* of counsel), for the respondent.

The opinion of the court was delivered by

HEHER, J.

The subject of controversy here is the title to a savings account opened by one John Wilson with the defendant bank on December 4th, 1944, in his own name "in trust for Dorothy Bendix," the complainant. The initial deposit was $1,600, which complainant insists was her own money. At the same time, complainant opened a savings account in her name "in trust for John Wilson," with a like deposit of $1,600. She testified that all the moneys thus deposited, $3,200, were her savings from "salary" earned in the pursuit of her employment, and that she "carried" the entire sum on her "own person," although she later qualified this somewhat. Complainant and Wilson were together when the accounts were opened; and they told the bank clerk they "wanted to open a joint account;" and, when they were informed that if the account was joint, withdrawals could be made on the signature of either or both, "they decided they each wanted an account, one in each name."

Wilson died on January 3d, 1947, leaving a balance in the former account of $1,022.36, the sum involved in the litigation. There were several deposits in this account during Wilson's lifetime, all of which complainant testified she made

from her own accumulated savings. And, with one exception, the withdrawals, she also said, were actually made by her on vouchers signed by Wilson but prepared by her. Deposits were also made in her own account "as trustee" identical in date and amount with those made in Wilson's account; and these, she said, were all her own "savings." And the withdrawals from her account were all made by her. The withdrawals from these two accounts were also identical in amount and date, save the last which closed her account, $1,026.97, made by complainant one week after Wilson's death. Complainant and Wilson lived together, though not married to each other; and on occasion they represented themselves as husband and wife. Complainant testified that Wilson turned over to her his weekly earnings of $48, and that she provided him with "expense" money and used the balance for "household expenses" and "saved" her own earnings. There was no evidence of the existence of a trust, or of the giving of notice to the bank of the existence and terms of a legal and valid trust, save in the form of the bank accounts.

The estate of the deceased Wilson was not made a party to the suit; there is no evidence of a will or of the issuance of letters of administration upon his estate.

The learned Vice-Chancellor, in unreported conclusions, found that Wilson opened the account in question "with presumed knowledge" of *R. S. 17:9–4,* "and thus created a trust in himself as trustee for the benefit of complainant, over which he reserved a power of revocation during his lifetime, and since he never exercised such power the balance standing to the credit of said account at his death, by virtue of said statute, belongs to complainant free, according to the express terms of the statute, from any claim by Wilson's legal representative, even if the funds deposited in the account may have been the property of Wilson; therefore such representative, if any there be, is not a necessary party to this suit."

Thus, the Vice-Chancellor did not determine whether the moneys in the account were in fact complainant's property, so deposited merely for convenience or for some other purpose entirely consistent with the retention of title in her, or the existence in point of fact of all the elements of a valid gift

*inter vivos* or a valid and enforceable declaration of trust, if Wilson himself was the source of the fund; he read the statute cited *supra* as giving rise, even in the latter event, to a conclusive presumption of an intention to make a gift *in præsenti* of the bank credit to the putative *cestui,* followed by the acts essential to the effectuation of the intention; and therein he fell into error.

The case is ruled by the principle of *Rush* v. *Rush, 138 N. J. Eq. 611,* and *Stiles* v. *Newschwander, 140 N. J. Eq. 591.* Neither the form nor the content of the account is, in itself, conclusive of the issue of title and ownership. Such an interest (if any) as the putative *cestui* has in the fund derives from the intention of the parties. Both a gift *inter vivos* and a trust operative *inter vivos* are grounded in the intention of the donor or settlor. A donative purpose or a manifested intention to create a trust is requisite. A valid gift *inter vivos* has no reference to the future, and goes into immediate and absolute effect. The essentials of a gift *inter vivos* are, first, a donative intent; second, an actual delivery of the subject-matter of the gift, unless it be a chose in action, in which case the delivery must be of that variety of which it is most capable; and third, the donor must strip himself of all ownership and dominion over the subject-matter of the gift. And it is also indispensable to the validity of a declaration of trust that the donor or settlor "should have absolutely parted with that interest which had been his up to the time of the declaration—should have effectually changed his right in that respect and put the property out of his power, at least in the way of interest." *Stevenson* v. *Earl, 65 N. J. Eq. 721; Nicklas* v. *Parker, 69 N. J. Eq. 743;* affirmed, *71 N. J. Eq. 777.* It is of the essence of an express trust that the settlor make a present and unequivocal disposition of the subject property and divest himself of his interest therein.

*Ergo,* the statute hereinafter cited to one side, if the decedent's design was not a presently operative gift, but rather a transfer to himself as trustee with a reservation of full ownership and absolute dominion over the fund or chose in action until his death, the putative *cestui* to take the balance of the credit in the event of his survival, without any imme-

diate interest in the deposit, there was not a gift *in præsenti* or a valid trust *inter vivos;* and the gift in case of survival, *i. e.,* to take effect upon the death of the transferor, would be testamentary in character and void for non-conformance with the Statute of Wills. *Stevenson* v. *Earl, supra; Nicklas* v. *Parker, supra; McCullough* v. *Forrest, 84 N. J. Eq. 101; In re Farrell's Estate, 110 N. J. Eq. 260.* The requisites of an enforceable gift are absent in such case. There is not, for one thing, that divestment of dominion essential to a valid gift; the act is in its very nature testamentary and revocable. *Rush* v. *Rush, supra.* The mere opening of a bank account in the name of the depositor in trust for another is not conclusive of an intention to make an absolute gift of the subject-matter or to place it irrevocably in trust. The transaction may have taken that form for a reason not involving a donative intent. It is necessary that there be "some unequivocable act or declaration clearly showing that an absolute gift or trust was intended." *Nicklas* v. *Parker, supra.*

And *R. S. 17:9–4* does not give rise to a conclusive presumption of the existence of an intention to make an absolute gift *inter vivos* or to create an irrevocable trust. Like *R. S. 17:9–5* and *17:9–5.1,* it lays down a rule of evidence rather than of substantive law. It does not deem mere form to be identical with the substance; it is not to be read as imposing legal consequences to the agreement between the bank and such depositors and between the parties *inter se* contrary to their real intention. The statute has application only where "no other or further notice of the existence and terms of a legal and valid trust has been given in writing to the bank;" and, as we have seen, there was none such here. The form of the account is but *prima facie* evidence of a gift or a trust *inter vivos;* it constitutes presumptive evidence of an intention to make the purported gift or to create the trust which stands until overthrown by proof *contra.* The statute simply raises a rebuttable presumption of a valid and enforceable gift or trust. Such is the clear implication of the provision that it shall govern only where no "other or further notice" of the existence and terms of "a

legal and valid trust" has been given in writing tǒ the depositary. And thè corollary is that the language is not fairly expressive of an intention to modify the terms of the Statute of Wills in respect of such gifts or trusts. *Vide Thatcher* v. *Trenton Trust Co., 119 N. J. Eq. 408; Travers* v. *Reid, 119 N. J. Eq. 416.* The purpose so to do is not to be left to doubtful implication; such a radical change of policy should be expressed in clear and explicit terms. The subsequent phrase "notwithstanding that the funds so deposited may have been the property of the trustee" does not have countervailing significance. It is not unambiguous, standing alone. Viewed in the light of the context, it would seem to have reference merely to the origin of the fund. Apart from the protection afforded the depositary, the evident purpose was to raise, as between the depositor and the putative *cestui inter se,* a rebuttable presumption of an *inter vivos* gift or trust from the form of the account, nothing more.

In this view, the estate of the depositor is a necessary party to the suit if the decree is to be conclusive of the rights of all parties in interest.

Moreover, there is an efficient legal remedy for the enforcement of a trust passive or naked in character, such as the Vice-Chancellor found was raised by the statute. *Capraro* v. *Propali, 127 N. J. Eq. 419, 427.*

The decree is accordingly reversed, with costs; and the cause is remanded for further proceedings not inconsistent with this opinion.

*For affirmance*—BODINE, WACHENFELD, DILL, SCHETTINO, JJ. 4.

*For reversal*—THE CHIEF-JUSTICE, DONGES, HEHER, COLIE, EASTWOOD, BURLING, WELLS, FREUND, McLEAN, JJ. 9.