8 N.J. Super. 599 (1950)
73 A.2d 853
THE HOWARD SAVINGS INSTITUTION, A MUTUAL SAVINGS BANK OF NEW JERSEY, PLAINTIFF,
v.
SUSAN BARONYCH AND STEPHEN BARONYCH AS EXECUTORS OF THE WILL AND CODICILS OF MAX GLUCK, DECEASED, & C., ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 7, 1950.
*600 Mr. Wm. H. Osborne, Jr., for the plaintiff (Mr. S. Allen Craft, of counsel, Messrs. Pitney, Hardin & Ward, attorneys).
*601 Mr. James R.E. Ozias for the defendants Susan Baronych and Stephen Baronych, etc. (Messrs. McCarter, English & Studer, attorneys).
Mr. Milton M. Unger for the defendant Lev S. Tolokonnikov, Chief of the Consular Division of the Union of Soviet Socialist Republics, on behalf of the Village of Koniuchy (Messrs. Milton M. and Adrian M. Unger, attorneys).
FREUND, J.S.C.
On June 1, 1933, Max Gluck, a resident of and domiciled in Scranton, Pennsylvania, opened a savings account with the plaintiff, depositing the sum of $12,824.13, in the name of "Max Gluck, Trustee for Charity Fund of Village Koniuchy, Poland." No withdrawals from or additions to the account were made, except the accumulation of interest. When the account was opened, the village of Koniuchy was located in the Republic of Poland, but it is now within the borders of the Union of Soviet Socialist Republics. Gluck died on March 3, 1940. His will dated May 6, 1939, and three codicils thereto dated September 26, 1939, October 23, 1939, and November 21, 1939, respectively, were admitted to probate by the Register of Wills of Lackawanna County, Pennsylvania, and letters testamentary thereon were issued to the defendants, Susan Baronych and Stephen Baronych, who in the will were referred to as "administrators." The bank account was opened almost six years prior to the execution of the will. The will mentioned that the testator had cash on deposit in the plaintiff bank, but made no specific reference to the account. In the first codicil dated September 26, 1939, however, Gluck specifically referred to the account, stating "I am leaving fund after my death for my birth Village of Koniuchy, County of Berezani, Poland, Fund of the Poor," and he appointed his executors as "Administrators of this Fund." And, "In order that this fund may be distributed in accordance with my wishes, I hereby nominate an Assistance Committee of the Koniuchy people as follows: Controller Timko Nazar, * * * Thomas Urmanec, * * * *602 John Melish." He provided that if any of the aforesaid "Assistance Committee" should die, the "administrators" should nominate someone to serve in his stead. The codicil provided further "Controller Timko Nazar will keep in his possession until the fund will last."
In the last codicil dated November 21, 1939, Gluck provided, inter alia:
"The following are the further desires of my Will which Stephen and Susan Baronych are to carry out after my death:
"1. I am leaving the sum of $15,601.63, without interest, to the Village of my birth, Koniuchy, Poland, for charitable purposes; and from this charitable fund, there shall be paid Ten ($10.00) Dollars apiece to the poor per year, as long as this fund lasts; all expenses to be incurred in the administration of these trusts are to be charged against this fund, and to this matter, I have appointed from the Village of Koniuchy, a Committee, namely, Timko Nazar, Scranton, Pa., Thomas Urmanec, Scranton, Pa., and Joseph Melish, 52 Lowland Drive, Buffalo, New York.
"The Town of Koniuchy is today under Russian occupation and should circumstances prevent the people of Koniuchy from enjoying the benefits of this fund, then in that case it is to be used here in America for the welfare of the poor. * * *"
The plaintiff filed this proceeding for instructions regarding the distribution of the fund. The defendants are:  Susan Baronych and Stephen Baronych, executors under the will and codicils of the decedent and testamentary trustees under the alleged trust created by Gluck; the Chief of the Consular Division of the Union of Soviet Socialist Republics who has filed an answer on behalf of the Village of Koniuchy; and the Attorney General of the State of New Jersey because of a possible public interest in the charitable trust.
The attorneys for the executors of the estate and the attorneys appearing on behalf of the Village of Koniuchy both urge that no valid inter vivos trust exists. The former claim that the fund should be turned over to the defendant executors as an asset of the estate. The attorneys for the Village contend that a valid testamentary trust was created for the benefit of the poor of the Village of Koniuchy and that the fund being in this State should be administered here or deposited *603 in court and its distribution by the testamentary trustees supervised, because they are not residents of New Jersey.
At the time the account was established in 1933, R.S. 17:9-4 was in effect, but this statute was repealed by Chapter 67 of the Laws of 1948, Article 46, Section 336, page 413, and in its stead, Section 216 of Article 35 of Chapter 67, page 350, was enacted. This latter section was amended by the Laws of 1949, Chapter 286, Section 216, page 880, R.S. 17:9A-216, paragraph E of which expressly provides that "Funds heretofore or hereafter deposited to the credit of an account opened prior to the effective date of this act in the name of an individual depositor as trustee or in trust for a named beneficiary shall be subject to the law in effect on the date when such account was opened." Therefore, the applicable law is the one in effect in 1933, which reads as follows:

"R.S. 17:9-4. Deposit in trust in banks, savings banks or trust companies.
"When a deposit has been or shall be made in a bank, savings bank or trust company by a person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust has been given in writing to the bank, savings bank or trust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the deposit was made, or to his legal representative and the legal representative of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee. * * *"
The attorneys for the executors argue that the statute does not apply for several reasons: that the statute contemplates only natural persons as beneficiaries and that the "Charity Fund of Village Koniuchy, Poland," is not a natural person within the meaning of the statute, and, in the alternative, if the statute does apply, no valid inter vivos gift was created, and, if created, was revoked by the testamentary disposition of the fund. The attorneys for the Village of Koniuchy agree that a valid inter vivos trust was not created, but contend that a valid testamentary trust was established under the will.
*604 It has been held that "neither the form nor the content of the account is, in itself, conclusive of the issue of title and ownership. Such an interest (if any) as the putative cestui has in the fund derives from the intention of the parties. Both a gift inter vivos and a trust operative inter vivos are grounded in the intention of the donor or settlor. A donative purpose or a manifested intention to create a trust is requisite. A valid gift inter vivos has no reference to the future, and goes into immediate and absolute effect. The essentials of a gift inter vivos are, first, a donative intent; second, an actual delivery of the subject matter of the gift, unless it be a chose in action, in which case the delivery must be of that variety of which it is most capable; and, third, the donor must strip himself of all ownership and dominion over the subject matter of the gift. And it is also indispensable to the validity of a declaration of trust that the donor or settlor `should have absolutely parted with that interest which had been his up to the time of the declaration  should have effectually changed his right in that respect and put the property out of his power, at least in the way of interest.' * * * And R.S. 17:9-4 does not give rise to a conclusive presumption of the existence of an intention to make an absolute gift inter vivos or to create an irrevocable trust. Like R.S. 17:9-5 and 17:9-5.1, it lays down a rule of evidence rather than of substantive law. * * * The form of the account is but prima facie evidence of a gift or a trust inter vivos; it constitutes presumptive evidence of an intention to make the purported gift or to create the trust which stands until overthrown by proof contra. The statute simply raises a rebuttable presumption of a valid and enforceable gift or trust." Bendix v. Hudson County National Bank, 142 N.J. Eq. 487 (E. & A. 1948); Bianchi v. Bedell, 2 N.J. Super. 236 (Ch. Div. 1949).
Under the facts of this case, the presumption of gift from the form of the account has been rebutted by the fact that Gluck at all times retained control over it. He did not strip himself of ownership or dominion over the subject matter. Therefore, apart from and without passing on the merits *605 of the other reasons urged by the parties, I conclude that there was no valid inter vivos gift or trust established, and that the sum on deposit shall be paid to the executors of the estate as though the account had been opened in the name of the decedent alone.
It is clear, however, that by the codicils to his will the decedent made disposition of the fund in the bank account for the benefit of the poor of the village of his birth. This testamentary disposition, and the validity and administration thereof are not for determination by this Court. While the validity of a gift or the creation of an inter vivos trust in personal property is governed by the law of the place where the gift is made or the transaction takes place, Cutts v. Najdrowski, 123 N.J. Eq. 481 (E. & A. 1937), a testamentary trust in personalty is to be construed according to the law of the testator's domicile, Rosenbaum v. Garrett, 57 N.J. Eq. 186 (Ch. 1898). There, as here, the testator was domiciled in Pennsylvania. Vice-Chancellor Reed said, "As already observed, the will was executed in Pennsylvania by a testator domiciled in that state at the time of his death. The general rule is that, as respects the personal property of a testator, the validity and meaning of the will are to be determined by the law of the domicile of the testator. * * * And in Harrison v. Nixon, 9 Pet. 483, 504, Judge Story writes: `* * * In regard to personalty in an especial manner, the law of the place of the testator's domicile governs the distribution thereof, and will govern in the interpretation of wills thereof unless it is manifest that the testator had the laws of some other country than his own in view.' * * * Now, that the language of a will creating trusts in property stands upon the same footing as any other indication of a testamentary disposition of property seems too plain for discussion. The power of the trustee over the personalty and the extent of the right of the cestui que trust to it, are to be ascertained by reading the will in connection with the law of testator's domicile, unless it is manifest that the testator had in mind the law of some other state."
*606 It is reasonable to infer from the facts in this case that the testator being a resident of Pennsylvania, his will having been probated in that state and having appointed trustees who are residents of that state, he intended that that state should have jurisdiction and supervision over the administration of the trust. Beale, Conflict of Laws, § 295.1; § 297.2; § 299.1. The parties have suggested that since the account in question was opened and since the will and codicils were executed, the Village of Koniuchy has passed from the sovereignty of the Republic of Poland to that of the Union of Soviet Socialist Republics, and that because of the changes in the political and economic life of the locality the intended beneficiaries of the trust may not receive its benefits, and that, therefore, the fund should be deposited into this Court in accordance with the provisions of P.L. 1940, c. 148, p. 315, R.S. 3:26-18, which authorizes the withholding of legacies and trust funds "where it shall appear that a legatee, next of kin or beneficiary of a trust would not have the benefit or use or control of the money or other property due him, or where other special circumstances make it appear desirable that such payment should be withheld." In re Url, 7 N.J. Super. 455 (Somerset Cty. Ct. 1950).
It having been concluded that the funds should be paid over to the executors of the estate and administered in the jurisdiction of the Commonwealth of Pennsylvania, the foregoing statute has no pertinency here, and the administration of the trust under the terms and provisions of the will should be in accordance with the laws of the Commonwealth of Pennsylvania and under the supervision of its courts.
Judgment accordingly.