ESTATE OF MICHAEL A. DOYLE, DECD., LAWRENCE A. DOYLE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70414.   Filed September 18, 1959.

*Richard H. Valentine, Esq.*, for the petitioner.
*Sheldon Seevak, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in estate tax in the amount of $9,769.71, with respect to the estate of Michael A. Doyle, Sr. Of the various adjustments resulting in that deficiency only three are now in dispute. They present the question whether there should be included in the decedent's gross estate: (a) $7,305.95 of a larger amount on deposit at the date of the decedent's death in the Morris County Savings Bank in the name of "Michael A. Doyle, Sr. or Michael A. Doyle, Jr."; (b) $10,981.96 of a larger amount on deposit at the date of decedent's death in the First National Iron Bank in the name of "Michael A. Doyle, Sr. Trustee for Michael A. Doyle, Jr."; and (c) United States Savings Bonds valued at $1,884 at the date of decedent's death which had been purchased by him during his lifetime and registered in the names of "Michael Doyle or Michael Doyle, Jr." and "Michael Doyle, Jr. or Michael Doyle, Sr."

The parties have stipulated the following facts:

1. That the decedent, Michael A. Doyle, died testate, a resident of Morris County, State of New Jersey, on September 14, 1953.

2. That at the time of decedent's death he left surviving two sons, namely, Lawrence A. Doyle and Michael A. Doyle, Jr.

3. That Lawrence A. Doyle was appointed executor of the estate of Michael A. Doyle, deceased, by the Surrogate of Morris County on September 25, 1953.

4. That Lawrence A. Doyle as executor of the estate of Michael A. Doyle, deceased, filed a federal estate tax return on June 9, 1955, with the Director of Internal Revenue, Newark, New Jersey.

5. That at decedent's death, there was on deposit in the Morris County Savings Bank at the sole office of said bank in Morristown, New Jersey, in Account No. 101170, the sum of $9,713.33, and the title of the account on the passbook was "Michael A. Doyle, Sr. or Michael A. Doyle, Jr." The sum of $2,407.38 was

deposited on December 27, 1951, in said account from funds belonging to Michael A. Doyle, Jr. The following amounts were deposited in said account by Michael A. Doyle, Sr. on the dates indicated:

| Date | Amount |
|---|---|
| 12/26/51 | $2,000.00 |
| 6/12/52 | 800.00 |
| 12/31/52 | 2,000.00 |
| 5/7/53 | 1,000.00 |
| 6/11/53 | 312.50 |
| 8/4/53 | 1,000.00 |
| Total | $7,112.50 |

Dividends were credited to said account on the dates indicated in the following amounts:

| Date | Dividend |
|---|---|
| 4/1/52 | $24.78 |
| 7/1/52 | 24.93 |
| 10/1/52 | 29.58 |
| 12/29/52 | 29.74 |
| 3/31/53 | 41.15 |
| 6/30/53 | 43.27 |
| Total | $193.45 |

There were no withdrawals from the account at any time prior to the decedent's death.

6. That at the decedent's death, there was on deposit in The First National Iron Bank at the sole office of said bank in Morristown, New Jersey, in Account No. 13512, the sum of $11,124.96, and the title of the account on the passbook was "Michael A. Doyle, Sr. Trustee for Michael A. Doyle, Jr." The sum of $143 was deposited on April 16, 1946, in said account from funds belonging to Michael A. Doyle, Jr. From March 14, 1935, to April 1, 1950, a total of $10,362.69 was deposited in said account by Michael A. Doyle, Sr. Interest credited to the account from March 14, 1935 to September 14, 1953, was $619.27. There were no withdrawals from the account at any time prior to the decedent's death.

7. That decedent during his lifetime purchased United States Savings Bonds and had these registered as follows: "Michael Doyle or Michael Doyle, Jr." and "Michael Doyle, Jr. or Michael Doyle, Sr." The value of these bonds at the date of death was $1,884.

(a) *The Morris County Savings Bank Deposit.*—As the stipulated facts disclose, there was on deposit in the Morris County Savings Bank $9,713.33 at the time of decedent's death. Of that amount, $7,305.95 was attributable to deposits made by the decedent.

The evidence shows that Michael, Jr., was born in 1930; that after his mother died in 1946 he lived with the decedent in the latter's home; that he attended Notre Dame University from September 1949 to June 1953, being away from home during that period except for summer recesses; and that he was in the military service from July 1953 to May 1955. The evidence further shows that the decedent

gave Michael, Jr., possession of the passbook for the Morris County Savings Bank account; that it was kept in a desk in Michael, Jr.'s bedroom; that decedent knew it was there, and had free access to it; that decedent never gave any reason for depositing money in their joint names; that Michael, Jr., considered the funds to be his and assumed he could do anything he wanted with them "so long as it was not contrary to anything that he [decedent] may have thought."

New Jersey Laws 1948, ch. 67, p. 352, sec. 218 (N.J. Stat. Ann. sec. 17:9A–218), applicable to joint accounts, provide as follows:

When a deposit has been or shall be made with a banking institution in the names of two persons, payable to either, or payable to either or to the survivor, any moneys to the credit of the account may be paid to either of said persons during the lives of both and, in the case of the death of either of said persons, the moneys to the credit of the account shall, unless otherwise provided in the deposit contract, be paid to the survivor, and the legal representative of the one dying shall have no right thereto notwithstanding that such moneys or any part thereof may have been the property of the one dying. Nothing in this section shall impair the rights, if any, of creditors of either depositor.

The New Jersey courts have held that this statute does not raise a conclusive presumption of the survivor's title where funds are deposited in an account in the name of one individual and/or another person. *Farris* v. *Farris Engineering Corporation,* 7 N.J. 487, 81 A. 2d 731; *Rush* v. *Rush,* 138 N.J. Eq. 611, 49 A. 2d 238. In the latter case, which arose under a predecessor section which was substantially similar to section 17:9A–218, the court said (49 A. 2d at 241):

It [the predecessor of sec. 17:9A–218] lays down a rule of evidence rather than of substantive law. Apart from the measure of protection afforded the bank depository in the making of payments from joint accounts, which would seem to be its primary function, the act at the most raises a rebuttable presumption of the survivor's title to the balance of the credit in case of the death of either, where the deposit has been made in the name of two persons, "payable to either, or payable to either or to the survivor." Such constitutes presumptive evidence of an interest by survivorship which stands until overthrown by proof contra. It is inconceivable that the Legislature intended to raise an irrebuttable presumption of what is in effect a joint tenancy where, for instance, the account is merely made payable "to either" of the codepositors. This ordinarily, simply evidences an intent that either may draw from the account. The statute does not purport to render the contract between the bank and the codepositors, as revealed by the pass book or book entries, conclusive evidence of the depositors' interests inter se. * * *

In the instant proceeding petitioner seeks to rebut the presumption raised by the New Jersey statute that decedent's son Michael acquired title to the amounts deposited by decedent in the account by right of survivorship upon the death of decedent. Petitioner urges that the decedent made a gift inter vivos to Michael, Jr., of

the entire amount of the deposits prior to his death; that he retained no interest whatsoever in such deposits which could pass to Michael, Jr., at the time of his death; that the entire account became the sole property of Michael, Jr.; and that the account was maintained in joint form for convenience only.

While the record supports a finding that the decedent gave his son a joint interest in the account, we are not satisfied on the evidence that he intended to do more than that and irrevocably gave his son the entire account. Michael, Jr.'s testimony itself recognized that the father retained some control over the account, for he stated that he assumed he could do anything he wanted with the money "as long as it was not contrary to anything he [decedent] may have thought." There was no clear-cut evidence that the father intended to strip himself of all rights in the deposited funds, or that he was making an irrevocable gift to Michael, Jr. On the contrary, it seems plain that although he intended to benefit his son, that benefit was to take the form of giving his son a joint interest in the deposited funds. Certainly, if the son had predeceased his father, the evidence before us is not such as would have precluded his father from successfully claiming the balance in the joint account for himself. That Michael, Jr., may have had possession of the passbook loses much of its significance in the light of the fact that possession by him would have been appropriate also if he were given only a joint interest as opposed to sole and irrevocable ownership of the account. Moreover, it appears that the decedent had free access to the passbook at all times.

We cannot say from such testimony as was offered that the decedent ever delivered the passbook to Michael, Jr., with the intent of making a present gift of the moneys deposited in the account. He never told Michael, Jr., that he was making any such gift. And we cannot conclude that he stripped himself of all interest in and control over the deposited funds. We think he did intend to give his son a joint interest in the account; but the gift of such a joint interest brings into play section 811(e), I.R.C. 1939, which justified the Commissioner in including in the gross estate that portion of the amount on deposit at the decedent's death that had its source in deposits previously made by the decedent.

(b) *The First National Iron Bank Account.*—This account was in the name of "Michael Doyle, Sr., Trustee for Michael A. Doyle, Jr." and the Commissioner has included in the decedent's gross estate $10,981.96 of the balance in the account on the date of death. The amount so included was attributable to deposits previously made by the decedent.

Petitioner contends that this account constituted a valid irrevocable trust for the benefit of decedent's son, Michael, Jr., and the money in this account at the time of decedent's death is not includible in the gross estate.

New Jersey Laws, 1932, ch. 40, p. 59, sec. 1, in effect when this account was opened in 1935,[1] provided as follows:

Whenever any deposit shall be made with any savings bank, trust company or bank by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the savings bank, trust company or bank, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the said deposit was made, or to his or her legal representatives and the legal representatives of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee; *provided*, that the person for whom the deposit was made, if a minor, shall not draw the same during his or her minority without the written consent of the legal representatives of said trustee.

The meaning and effect of this statute, and N.J. Rev. Stat. sec. 17 : 9–4, 1937 which is identical in all material respects, have been discussed by the New Jersey courts in numerous instances. *Thatcher* v. *Trenton Trust Co.*, 119 N.J. Eq. 408, 182 Atl. 912; *Travers* v. *Reid*, 119 N.J. Eq. 416, 182 Atl. 908; *Abruzzese* v. *Oestrich*, 138 N.J. Eq. 33, 47 A. 2d 883; *Hickey* v. *Kahl*, 129 N.J. Eq. 233, 19 A. 2d 33; *Bendix* v. *Hudson County National Bank*, 142 N.J. Eq. 487, 59 A. 2d 253. In the latter case, the court stated (59 A. 2d at 256), that the statute did not give rise to a conclusive presumption of the existence of an intention to make an absolute gift inter vivos or to create an irrevocable trust; that it laid down a rule of evidence rather than of substantive law; and that apart from the protection afforded the depositary, the evident purpose was to raise, as between the depositor and the putative *cestui inter se*, a rebuttable presumption of an inter vivos gift or trust from the form of the account, nothing more. In *Hickey* v. *Kahl*, the Court of Chancery, (19 A. 2d at 38) stated that:

The act is somewhat involved in its phraseology but I think its intent plain and that it is my duty to give effect to such intent, which I find to be that when one (donor) opens an account in a savings bank in his name in trust for a named beneficiary (donee) and there is no evidence as to the intent of the donor which can be shown after the donor's death, other than as can be gathered from the form in which the account was opened, the intent of the donor shall be taken to be to *create an immediately effective trust* for the benefit of the donee, *over*

[1] N.J.L. 1953, ch. 17, p. 174, sec. 34 (N.J. Stat. Ann. sec. 17 : 9A–216) provide, in part, as follows: "Moneys heretofore or hereafter deposited to the credit of an account opened prior to the effective date of the act in the name of an individual depositor as trustee for a named individual shall be subject to the law in effect on the date when such account was opened."

*which the donor reserves a power of revocation,* as evidence of which he retains possession of the passbook, and that so much of the funds deposited in that trust account over which the donor has failed to exercise his power of revocation shall belong to the donee free from any claim thereto on the part of the donor's legal representatives. In such a case the only effect of the donor's death is to terminate his power of revocation. * * * [Italics supplied.]

In *Abruzzese* v. *Oestrich,* the Court of Chancery stated (47 A. 2d at 889) that this power of revocation is inconsistent with a right in the donee to the possession or enjoyment of the fund in the donor's lifetime.

In *Bendix* v. *Hudson County National Bank,* 59 A. 2d at 256, the court said:

The mere opening of a bank account in the name of the depositor in trust for another is not conclusive of an intention to make an absolute gift of the subject matter or to place it irrevocably in trust. The transaction may have taken that form for a reason not involving a donative intent. It is necessary that there be "some unequivocable act or declaration clearly showing that an absolute gift or trust was intended". Nicklas v. Parker, supra [69 N.J. Eq. 743, 61 Atl. 269].

Petitioner urges that it should be inferred from the evidence, and found as a fact, that under New Jersey law there was a valid irrevocable trust for the benefit of the decedent's son Michael. The evidence relied on is that the deposits were made by the decedent in the account during the minority of his son; that the deposits were made at the same time as decedent made gifts to his other son, Lawrence; that decedent on these occasions said to Michael, "Mike, I am doing this for Larry, but I am also putting this in the bank for you"; and that decedent never made any withdrawals from the account. Other evidence reveals that the passbook for the account was retained by the decedent and kept in his desk in his office.

We are unable to find from the evidence that there was any unequivocal act or declaration by the decedent during his lifetime indicating an intention to surrender dominion and control of the deposits he made in the account. While it appears that he was making the deposits for his son and made no withdrawals from the account during his lifetime, his retention of possession and control over the passbook gave him the power to make such withdrawals had he chosen to do so. He did not therefore strip himself of ownership and control of the amounts deposited, and this retention of ownership and control rebuts any presumption of gift that may arise from the form of the account. Cf. *Howard Savings Institute* v. *Baronych,* 8 N.J. Super. 238, 73 A. 2d 853, 856. It also requires the inclusion of the amount which decedent had deposited in the account in his gross estate for estate tax purposes either under section 811(a), as property in which he had an interest at the time of his death, or under section

811(c)[2] as a transfer of property which was intended to take effect in possession and enjoyment at or after his death, or under section 811(d),[3] if a trust was created, as a transfer which, at the date of his death, was subject to the exercise by him of a power of revocation.

Petitioner argues on brief that since the respondent in his notice of deficiency included the First National Iron Bank account in decedent's estate as "jointly owned property" and the evidence discloses that it was not jointly owned property, this Court should decide the issue involving this account in its favor. We do not agree. In the petition it is alleged that the respondent erred in including the account in decedent's gross estate "because decedent had no interest in said property at the time of his death," and this allegation was denied by respondent in his answer. At the trial the respondent's counsel stated in his opening statement that he was contending that a valid irrevocable trust was not created by the account and that any interest Michael acquired in the funds deposited by the decedent therein did not take effect in possession and enjoyment until decedent's death. And the petitioner's counsel in his opening statement announced that he proposed to prove that the money in the account was held by the decedent under an irrevocable trust. In the circumstances we think it apparent that petitioner was aware that the issue was whether decedent retained any interest in the account at the date of his death which warranted its inclusion in his gross estate under section 811 of the Internal Revenue Code of 1939. It did not sustain its burden of proving that the decedent did not retain such an interest, and the determination of the respondent must be approved even though the reason assigned by him in the notice of deficiency for the inclusion of the account in decedent's gross estate may not have been strictly accurate. Cf. *Helvering* v. *Gowran*, 302 U.S. 238, 245, rehearing denied 302 U.S. 781; *Alexander Sprunt & Son, Inc.* v. *Commissioner*, 64 F. 2d 424, 427 (C.A. 4); *Bennett's Travel Bureau*, 29 T.C. 350, 356–357.

(c) *Savings Bonds.*—The remaining issue relates to United States Savings Bonds registered in the name of "Michael Doyle or Michael

---

[2] Section 811 provides that the value of the gross estate of the decedent shall be determined by including the value at the time of all property—

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise—

\* \* \* \* \* \* \*

(C) intended to take effect in possession or enjoyment at or after his death.

[3] (d) REVOCABLE TRANSFERS.—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer * * * where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * by the decedent * * * to alter, amend, revoke or terminate * * *

Doyle, Jr." and "Michael Doyle, Jr. or Michael Doyle, Sr." which were purchased by decedent during his lifetime. The respondent determined that the value of these bonds was includible in decedent's gross estate. Petitioner offered no evidence to prove that respondent's determination was erroneous and does not deal with this issue in its brief. In the circumstances it must be assumed that it is conceding the correctness of respondent's determination. Moreover, to the extent that the stipulated facts relate to this issue, the respondent's determination appears to be correct.

*Decision will be entered under Rule 50.*