ESTATE OF CHARLES J. ROSE, SR., CHARLES J. ROSE, JR., EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Rose v. Commissioner
Docket No. 224-72.
United States Tax Court
T.C. Memo 1973-102; 1973 Tax Ct. Memo LEXIS 185; 32 T.C.M. (CCH) 461; T.C.M. (RIA) 73102; April 26, 1973, Filed James C. Herndon and Robert W. Briggs, for the petitioner. John P. Graham, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Petitioner seeks a redetermination of a deficiency in estate tax in the amount of $5,150.46 and an addition thereto under section 6651(a) [1] in the amount of $1,287.61. Petitioner also claims an 2 overpayment of $7,384.36 resulting from its payment of respondent's prior assessment of an addition under section 6651(a) to the tax shown as payable on petitioner's estate tax return. Petitioner has conceded one of the adjustments contained in the notice of deficiency. Two issues remain for our decision: (1) Whether a portion of a savings account held in decedent's name at the time of his death but alleged by petitioner to be the separate property of decedent's son should be included in the gross estate. (2) Whether petitioner's failure to file an estate tax return within the prescribed time was due to reasonable *187 cause and not due to willful neglect. Some of the facts have been stipulated and are so found. Charles J. Rose, Sr. (hereinafter referred to as the decedent), a resident of Niles, Ohio, died testate on March 4, 1967. Charles J. Rose, Jr. (hereinafter Charles), a son of the decedent, was appointed executor and filed the estate tax return with the district director of internal revenue, Cleveland, Ohio. At the time he filed the petition in this case, Charles was a resident of Niles, Ohio. 3 Michael Rose, a mentally retarded son of the decedent, was born on June 25, 1936. He graduated from the special education program for retarded children of the Niles public schools on May 29, 1956. Michael could perform menial tasks and sign his name but lacked the mental ability to manage his own affairs independently. The decedent was a stockholder and officer of the Union Distributing Company (hereinafter Union) of Girard, Ohio, a wholesale distributor of beer and wine. Union employed Michael Rose to do janitorial work, load trucks, and perform other tasks within his capabilities. From about the age of sixteen until his graduation from the special education program, Michael worked *188 part-time for Union. Thereafter, Michael worked for Union as a full-time employee. Michael Rose received gross wages from Union, from which taxes were withheld, as follows: [2] Year
Gross wages
Taxes withheld
1957
$2,382.00
$ 375.45
1959
3,395.60 *
1960
3,519.56 *
1961
3,625.20 *
1962
3,690.68
653.86
1963
2,661.52
488.75
1964
3,487.52
535.72
1965
2,842.80
413.00
1966
3,109.52
482.16
1967
3,240.00 * 4 Michael lived with his parents in their home in Niles. Decedent was Michael's constant companion and supervised all of his activities. Union paid Michael his wages each week by check. Decedent collected Michael's paychecks for him, together with his own, and usually cashed them in the company office. Each day decedent gave Michael a dollar or two for his lunch and other incidental expenses. Decedent otherwise managed all of Michael's money and paid all of his expenses. 1. Includability of Savings Account The savings account in question derived from an account which was opened in July 1952 with a deposit *189 of $20. The original account was in the name of "Michael Rose or Mrs. Charles Rose, Sr." The latter decedent's wife and Michael's mother. In 1960, because of the illness of Mrs. Rose, the original account, which had a then balance of $6,783.88, was closed and a new account in that amount was opened under the designation "Michael Rose or Charles Rose, Sr." In 1964, when Mrs. Rose died, that account, which had a then balance of $11,673.61, was closed and a new account in that amount was opened with the designation "Charels J. Rose, Sr. or Rosemont Andres IN TRUST FOR Michael Rose." Rosemont Andres was one of decedent's 5 children, who, together with her husband, came to live with decedent upon Mrs. Rose's death. In 1967, after decedent learned that he had terminal cancer and because of his increasing concern for Michael's future and his desire to protect Michael against withdrawals by Rosemont Andres, that account, which had a then balance of $17,651.71, was closed and, together with a substantially larger amount of decedent's own funds, deposited in the account involved herein, bearing the designation "Mr. Charles J. Rose, Sr." From time to time, numerous deposits in varying *190 amounts were made in the foregoing accounts and interest was regularly credited on the balances. The only withdrawals made consisted of one for $1,000 in 1962, one of $1,600 in 1964, and one for $15,000 in January 1967. The last mentioned withdrawal came from the funds of decedent deposited in the account in question, and the amount thereof was included in the estate tax return as a gift in contemplation of death. At the date of death, the account in question contained a balance of $29,623.89, consisting of $11,972.18 of decedent's funds (which was included in the estate tax return as part of the gross estate) and the $17,651.71 which was the balance in the previously 6 existing account designated as being held in trust for Michael. Michael's Federal income tax returns for 1957 and 1962 through 1966 (the only ones available at the time of trial) showed that, although $64.88 interest on the then existing account was not reported for 1957, the entire amount of interest on the account for each of the other years was reported. Decedent's will, which was admitted to probate, provided that decedent's shares of stock in Union were to be distributed equally among his four children *191 other than Michael, on the condition that each pay his share of estate and inheritance tax attributable to such stock. The residue of decedent's estate was to be placed in trust for the benefit of Michael. The inventory of decedent's estate which was filed with the probate court included the entire balance of the account in question. Exceptions to the inventory were filed on behalf of Michael and Rosemont. Michael claimed, inter alia, that $17,651.71 of the savings account was his property and not a part of the decedent's estate. The probate court, after intensive litigation activities on the part of the parties to the action and in accordance with an agreed settlement 7 among the decedent's estate and his five children, found, inter alia, that the said $17,651.71 was "not properly a part of the estate of Charles J. Rose, Sr.," but was the "sole and separate property of Michael Rose." Pursuant to the court's order, the $17,651.71, together with other property belonging to Michael, was delivered to a designated bank, which the court had appointed as the guardian of the estate of Michael Rose. The includability of a portion of the savings account turns upon a determination *192 of the "extent of the interest therein of the decedent at the time of his death." Section 2033. Respondent's regulations explain that property in which the decedent had an interest means "all property * * * beneficially owned by the decedent at the time of his death." (Emphasis supplied.) Section 20.2033-1(a), Estate Tax Regs. Our resolution of the issue therefore depends on a determination of who was the beneficial owner of the money in question, the decedent or Michael. See Estate of Chrysler v. Commissioner, 361 F. 2d 508, 510 (C.A. 2, 1966), reversing on other grounds 44 T.C. 55 (1965). The issue is purely factual and petitioner has the burden of proof. Rule 32, Tax Court Rules of Practice. As might be expected, 8 the evidence is not crystal clear. However, on the basis of the record as a whole, we have concluded that petitioner has satisfied that burden. In reaching our conclusion, we have been influenced by the following factors, among others: (1) the special and close relationship between the decedent and Michael; (2) that Michael's name appeared on the accounts over the years except at the very end when specific reasons for the account *193 designation existed; (3) that Michael had earnings of his own and that the indicated unused portion of those earnings was in excess of the amount claimed to be excludable from decedent's gross estate; (4) that regular deposits were made in the accounts over the years, although concededly it is hard to perceive any direct correlation between Michael's net weekly earnings and the amounts of the deposits; and (5) the position adopted by the probate court, although we are, of course, not bound by that court's decision ( Commissioner v. Estate of Bosch, 387 U.S. 456 (1967)). Estate of Michael A. Doyle, 32 T.C. 1209 (1959), relied upon by respondent, is factually distinguishable in that it involved a situation wherein the deposits were admittedly the decedent's own funds, over which he continued to retain control. The same 9 situation obtained in Wasserman v. Commissioner, 139 F. 2d 778 (C.A. 1, 1944), affirming 46 B.T.A. 1129 (1942), and Harley A. Wilson, 56 T.C. 579 (1971). Estate of Chrysler v. Commissioner, supra, merely reflects differing views between this Court and the Second Circuit on the effect *194 of the evidence as to ownership. See Dorothy Stuit 54 T.C. 580, 582 (1970), affd. 452 F. 2d 190 (C.A. 7, 1971).[3] Indeed, the Doyle cases recognizes that a bank account in a decedent's name can be recognized as having difference ownerships in specific dollar amounts. See 32 T.C. at 1210. In view of the foregoing, we find that $17,651.71 of the balance of the account in question herein was the separate property of Michael and we accordingly hold that such amount is not includable in decedent's gross estate. $2. Late Filing of Estate Tax Return Charles, the executor of decedent's estate, retained an attorney for the estate, who had been a practicing lawyer in Ohio for some 45 years. He 10 did not consider himself an expert in Federal estate tax matters. Charles relied entirely on the attorney to handle all the affairs of decedent's estate, including the filing of the Federal tax return. Charles never *195 specifically requested that the estate tax return be filed nor did he ask when the return was required to be filed. The due date for the Federal estate tax return was June 4, 1968. The attorney, otherwise occupied with the administration of the estate, failed to prepare the return until after the due date. On November 4, 1968, Charles executed the return and signed a check, also prepared by the attorney, for the amount of estate tax shown as payable on the return. Charles was not aware at the time that the return was being filed late. The return was received by the district director of internal revenue, Cleveland, Ohio, on November 12, 1968. Petitioner was required to file the estate tax return within 15 months of decedent's death, or not later than June 4, 1968. Section 6075(a). The duty to file the return was vested in Charles as executor. Section 6018(a) (1). Petitioner contends that Charles relied entirely upon the attorney for the estate to handle all the 11 affairs of the estate and that this reliance constituted reasonable cause for failure to make a timely estate tax return under section 6651(a). [4]
*196 In support of this contention, petitioner relies on cases such as Adelaide McColgan, Administratrix, 10 B.T.A. 958, 960-961 (1928), and Estate of Michael Collino, 25 T.C. 1026 (1956). See also Estate of Daisy F. Christ, 54 T.C. 493 (1970). Such cases are distinguishable, however, because the executors therein relied upon the mistaken advice of their attorneys that no estate tax return need be filed. Such is not the instant situation, where Charles never inquired of his attorney when the return was required to be filed. Petitioner also relies on In re Fisk's Estate, 203 F. 2d 358 (C.A. 6, 1953), reversing a Memoranudm 12 Opinion of this Court. See also McIntyre v. Commissioner, 272 F. 2d 188 (C.A. 6, 1959), reversing per curiam a Memorandum Opinion of this Court. As we have recently pointed out, [5] these cases turned on the fact that the estate tax return was received only one day late and was, in fact, mailed within the time prescribed by statute, and their scope is therefore extremely narrow. See Estate of Frank Duttenhofer, 410 F. 2d 302 (C.A. 6, 1959), affirming 49 T.C. 200 (1967), *197 where the Sixth Circuit stated that "a five-month delay," as in the instant case, "does not appear to us to present a comparable situation." We think that this case is controlled by Estate of Henry P. Lammerts, 54 T.C. 420, 445-447 (1970), affirmed as to this issue, 456 F. 2d 681, 683 (C.A. 2, 1972). In that case, we held that an executor has a positive duty to ascertain the nature of his responsibilities as such. Failure to do so was not the exercise of "ordinary business care and prudence" (section 301.6651-1(a) (3), Proced. & Admin. Regs.) so as to constitute reasonable cause for the untimely filing of a required return. See 54 T.C. at 446. 13 The facts herein indicate that Charles delegated the entire responsibility to the attorney. His action (or, more accuratedly stated, inaction) reflects "simply passivity" and, as a consequence, is insufficient to constitute reasonable cause under section 6651(a). See Estate of Lammerts v. Commissioner, 456 F. 2d 681, 683 (C.A. 2, 1972). We sustain the respondent's imposition of the addition to petitioner's *198 estate tax. In order to reflect our conclusions as to the two issues discussed above and to permit petitioner a deduction from the gross estate for expenses paid incident to his proceeding, [6]
Decision will be entered under Rule 50. Footnotes
1. Unless otherwise specified, statutory references are to the Internal Revenue Code of 1954. ↩
2. Figures are unavailable for the years not listed and for those items marked with an asterisk (*). ↩
3. Similarly, in Estate of Rosie Giacopuzzi, T.C. Memo. 1970-356↩, also relied upon by respondent, the Court simply reached a different conclusion on the issue of ownership on the basis of the evidence before it. 4. EC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax. - In case of failure - (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; ↩
5. Estate of Anthony Geraci, T.C. Memo. 1973-94↩. 6. See section 20.2053-3(c) (2), Estate Tax Regs.; Rule 51, Tax Court Rules of Practice.↩